UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 7:12-CR-3-ART-REW |
| | ) | No. 7:15-CV-110-ART-REW |
| v. | ) | |
| | ) | |
| HOWARD HARLOW BACK, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Howard Harlow Back, is a federal inmate. DE #337 (Motion), at 1. On October 19, 2015,[1] Back filed a *pro se*[2] motion, accompanied by a lengthy memorandum of law and various exhibits, under 28 U.S.C. § 2255. *See generally id.* The Court granted, on particular terms, the Government's motion to find waiver of attorney-client privilege. DE #343 (Order). The United States responded in opposition on the merits. DE #344 (Response). Back replied. DE #345 (Reply). The matter is ripe for consideration. Per normal practice, the District assigned the motion to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #337), **GRANT** a Certificate of Appealability as to issue 2, and **DENY** a Certificate of Appealability on issues 1, 3, and 4.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Back affirmed under penalty of perjury that he executed and mailed the motion, per prison mail, on October 19, 2015. DE #337, at 13.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

# I.      BACKGROUND INFORMATION

On March 12, 2012, the United States, via DEA Task Force Officer Richard A. Dalrymple, filed a criminal Complaint and affidavit, charging Back with conspiring to possess with intent to distribute oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. § 846. DE #1 (Complaint). A federal grand jury subsequently indicted Back on one count of conspiring to knowingly and intentionally distribute oxycodone. DE #6 (Indictment). The grand jury later returned a superseding indictment, charging Back with the same crime and adding four co-defendants. DE #18 (Superseding Indictment). The grand jury then returned a second superseding indictment, charging Back with one count of conspiracy to distribute oxycodone, in violation of § 846, and twelve individual counts of distributing oxycodone, in violation of § 841(a)(1). DE #145 (Second Superseding Indictment).

Back went to trial, and the jury found him guilty on all counts contained in the second superseding indictment. DE #195 (Jury Verdict). Judge Thapar sentenced Back on November 5, 2013. DE #253 (Sentencing Minute Entry). Movant received a total prison sentence of 262 months, to be followed by 10 total years of supervised release, and the Court ordered a particular special assessment and fine. DE #254 (Judgment); *see also* DE #259 (Amended Judgment). Back appealed; the Sixth Circuit affirmed. DE #303 (Sixth Circuit Order). On October 19, 2015, Back timely submitted a § 2255 motion to vacate. DE #337. The Government responded. DE #344. Back replied. DE #345. The motion stands ripe for review. For the reasons set forth below, the Court wholly rejects Movant's arguments. The Court recommends issuance of a Certificate of Appealability as to issue 2

because the merits and resolution of that claim are debatable, but issues 1, 3, and 4 do not qualify for such certification.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*)

("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.     ANALYSIS

In his § 2255 motion, Back makes four general arguments for relief: that (1) he received ineffective assistance of counsel (IAC) when his attorney failed to make an adequate and complete Rule 29 motion; (2) being required to go through sentencing without counsel was a due process and Sixth Amendment violation; (3) failure to investigate and / or evaluate competency violated his rights to due process and effective assistance of counsel; and (4) he received IAC regarding suppression and / or return of items seized from a safety deposit box. DE #337. Under this clear record, no theory justifies relief under 28 U.S.C. § 2255.

### A.     IAC re: Rule 29 Motion (Argument 1)

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential,"

4

featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the sentencing context, ineffective assistance "can result in *Strickland* prejudice because any amount of additional jail time has Sixth Amendment significance." *Id.* at 1386 (internal quotation marks, alteration, and citation omitted).[3]

Back first asserts that his counsel was ineffective when he "failed to submit an adequate and complete Rule 29 Motion for Judgment of Acquittal at the end of Petitioner's trial." DE #337, at 4. Back devotes 33 pages of his brief to support this argument via fine parsing of witness testimony. DE #337-1, at 7-39. The United States responded, DE #344, at 4-5, and Back replied. DE #345, at 2-4. The Court has read every page with care.

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "[A] trial judge confronted with a Rule 29 motion must consider all of the evidence in a light most favorable to the government." *United States v. Carter*, 355 F.3d 920, 925

---

[3] This standard applies to all IAC claims Back brings in the habeas motion.

(6th Cir. 2004). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *Id.* "It is well settled in this Circuit that attacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence. . . . It is equally clear that issues of witness credibility are for the jury." *Id.* (emphasis in original).

One district court expressed the test as follows: a "failure to make a Rule 29 motion does not constitute ineffective assistance unless there is a reasonable probability that the motion would have been granted. . . . The legal standard for a Rule 29 motion is whether, after viewing the evidence in the light most favorable to the prosecution, any rational juror could find the elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). Witness credibility may not be considered in the Rule 29 determination." *Benson v. United States*, No. 1:11-CV-368, 2011 WL 6009961, at *3 (W.D. Mich. Dec. 1, 2011).

Here, as in *Carter*, "[t]here was no reasonable probability that a motion for acquittal would succeed." 355 F.3d at 924. Accordingly, "[a]s a Rule 29 motion did not have a reasonable likelihood of success, it cannot be said that [Back]'s trial counsel was ineffective[.]" *Id.* at 925. The Court will not exhaustively recite (though it has reviewed) the testimony of every trial witness. Instead, it simply notes that the evidence of Back's guilt inarguably was sufficient to pass over the Rule 29 bar.[4]

---

[4] Back conclusorily characterizes himself as "actually innocent[.]" DE #337, at 4. He, however, makes no credible or supported claim of actual innocence. At most, Back attempts to poke holes or expose weaknesses in the trial testimony, but, as the District Court and the Sixth Circuit explained at the time, and as the Court explains in this

As an initial matter, the trial court did prompt and consider a Rule 29 motion. *See* DE #286 (Excerpted Tr.). Judge Thapar stated: "[T]here is enough there from which a reasonable jury could convict on both the conspiracy and the individual counts if they believe – on the conspiracy, there's a wealth of witnesses. On the individual counts, obviously, if they believe Montgomery and Bailey and, actually, Skeens and Adams, there's enough there to conclude – for a reasonable jury to conclude, when viewing the evidence in the light most favorable to the government, that he could be convicted." *Id.* at 2. Judge Thapar, who had presided over the entirety of the trial and viewed each evidentiary offering, thus denied the motions. *Id.*

Expounding on his oral ruling, Judge Thapar ordered in writing: "The Court determined that there was ample evidence for a reasonable jury to find Defendant Back guilty on all the charged counts—especially when that evidence was viewed in the light most favorable to the government. The United States' case in chief presented extensive testimony, along with audio and video recordings, establishing that the defendant orchestrated an oxycodone distribution ring. A reasonable jury could have reached a guilty verdict on all counts based on that evidence." DE #193, at 2-3.

The Sixth Circuit, confronting a sufficiency appeal, agreed:

---

Recommendation, there was sufficient evidence presented at trial to allow a rational jury to convict Back on all counts. Back offers nothing convincing to overcome or call into question that proof, and he offers no new evidence. He has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995). "[C]hallenges to the weight or credibility of the evidence do not establish innocence[.]" *Goward v. United States*, 569 F. App'x 408, 411 (6th Cir. 2014). "Moreover, a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) (internal quotation marks removed). The analysis does not apply in this context.

> The trial record contains evidence that two witnesses, Angela Montgomery and Roland Matthew Bailey, Sr., purchased oxycodone pills from Back. Montgomery purchased 50 pills from Back. And Bailey—at the direction of police—purchased pills from Back on 12 separate occasions. The jury also heard unrefuted testimony that Back used Bailey and others, including Bailey's wife Judy, sons Roland Jr. and Jeffrey, sister-in-law Joyce Ferguson, Jesse Moreno, Robbie Sparks, and Roy Alsip, to obtain oxycodone pills from pain clinics and pharmacies in Florida. The jury heard unrefuted testimony that prescriptions were obtained by Back, trips to Florida were financed by Back, and the pills obtained were divided between Back and the others. The evidence was clearly sufficient to support the jury's verdict.

DE #303 (Sixth Circuit Order), at 3.

Even if counsel had made a comprehensive Rule 29 motion, the District Court obviously would have denied it. Officer Neal Adams testified that two distinct confidential witnesses (Angela (or Samantha—she, apparently, went by both names, DE #275, at 49) Montgomery and Matt Bailey Sr.) made several oxycodone purchases from Back. DE #274 (Trial Tr.), at 47-48, 50-51 (listing 8 specific buy dates in January and February 2012), 58.[5] The Court conditionally admitted audio and video recordings of many of the transactions. *Id.* at 54-55. Detective Willie Skeens testified that he was the control officer on numerous oxycodone controlled purchases from Back in January and February 2012. DE #275 (Trial Tr.), at 8-9, 11-12. The confidential witness coordinating with Skeens was Roland Bailey. *Id.* at 11. Skeens described a traffic stop involving Back and confirmatory evidence obtained therefrom. *Id.* at 34-37.

Montgomery testified: "And were you able to make a purchase of oxycodone pills from Mr. Back? Yes. How many pills did you purchase? Fifty." DE #275, at 53. Roland Bailey Sr. testified to his oxycodone pill runs to Florida, paid for by Back. *Id.* at 77-80. Bailey testified that Back was essentially the sponsor for the trips, and Back got "half the

---

[5] Montgomery's involvement apparently went back to September 2011. DE ##274, at 47; 275, at 23-25.

medication" in return. *Id.* at 81. Jeffrey Bailey likewise testified that he conspired with Back and others to distribute oxycodone. *Id.* at 153-54; *see also, e.g.*, *id.* at 156 ("Who paid for that trip [to Florida]? He did. When you say 'he,' who's he? Harlow."). Jeffrey Bailey testified that Back got half the pills. *Id.* at 157. Roland Bailey Jr. testified similarly. *Id.* at 169-72. Bailey Jr. described selling pills on Back's behalf. *Id.* at 175-76.

Judy Bailey testified, for example: "Was there ever a period of time where you got any pills directly from Mr. Harlow Back? One time." *Id.* at 185. Emily Yates testified similarly. *Id.* at 203 ("Was there ever an occasion where Mr. Back provided you with oxycodone pills? Yes."). Tye Stiltner testified that he went "to Florida with Mr. Back to obtain pills[.]" *Id.* at 208; *see also id.* ("And who took you down there to Florida? Harlow. And who paid for those trips down to Florida? He paid for my trip one time, and then I established myself, seen the doctor myself."); *id.* at 209 ("Was there ever a period of time you were selling pills for Mr. Back? I'd say for about four months. . . . And how many pills were you selling a day for Mr. Back? Ten or twenty at a time. It would be 10 or 20 at a time. Would he front those to you? He'd give them to me to sell."). Jesse Moreno also testified similarly. *Id.* at 221 ("Did there ever come a time when you made any trips to Florida with Mr. Back to get prescription pills? Yeah. I went once. Let's see. I went once with him."); *see also id.* at 224 ("Did Harlow pay for that trip? Yeah."). KSP drug analyst Joseph Tanner testified to the inculpatory lab results in the case. DE #276, at 2-10.

The United States thus offered plenteous proof of Back's oxycodone conspiracy and individual-count distribution guilt. As the District Court and the Sixth Circuit already

decided, there was ample evidence—certainly sufficient evidence under Rule 29, viewed in the light most favorable to the Government—of Back's guilt presented at trial.[6]

"Counsel cannot be ineffective for failing to file a Rule 29 motion that lacks merit. *See Carter*, 355 F.3d at 924. Movant has failed to show that the motion would have been granted. A baseless motion would not have affected the outcome of the proceedings and therefore [c]ounsel was not unreasonable." *Benson*, 2011 WL 6009961, at *4. So too here. Because Back has not demonstrated that a more complete or adequate Rule 29 motion would have had merit, counsel was not ineffective for failing to make a meritless motion. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments."); *Carter*, 355 F.3d at 925 (no ineffectiveness if "a Rule 29 motion did not have a reasonable likelihood of success").[7]

> **B.    Due Process / Right to Counsel re: Sentencing (Argument 2)**

Next, Back asserts that his "rights to due process and counsel were violated when he went to sentencing without representation by professional counsel." DE ##337, at 5;

---

[6] Back's attack on certain witnesses as drug dealers and users centers on credibility. The jury fully had witnesses' drug involvement in front of it through the testimony, and, regardless, on a Rule 29 motion, credibility is not a proper consideration. *Carter*, 355 F.3d at 925.

[7] Back also offhandedly states: "While not a separate claim, Petitioner points out that his attorney was ineffective for failing to call a drug abuse expert to testify to the consequences of such massive, sustained drug abuse" by one witness. DE #337-1, at 27 n.10. Because Back specifically concedes that this is "not a separate claim," the Court will not extensively analyze it. The Court simply notes that Back utterly fails to address *Strickland*'s prejudice prong. He does not show, at a minimum, that the result of his trial likely would have been different if counsel had called a drug abuse expert as to Roland Bailey Sr. Back does not proffer the desired expert testimony, submit an expert report, show that the jury would have discounted Bailey Sr.'s testimony, or demonstrate that the jury would not still have convicted in light of the other overwhelming proof of guilt. *See, e.g.*, *Jackson v. McQuiggin*, 553 F. App'x 575, 583-84 (6th Cir. 2014); *Flick v. Warren*, 465 F. App'x 461, 464-65 (6th Cir. 2012).

337-1, at 40-49. The United States responded, DE #344, at 5-6, and Back replied. DE #345, at 4-5.

As an initial matter, both of these arguments (as to due process and the right to counsel) are likely procedurally defaulted.[8] It is clear that Back raised neither the due process nor right to counsel argument on direct appeal. A § 2255 motion is not an appeal substitute. Back likely, despite his brief argument to the contrary, DE #337-1, at 5-6, has not demonstrated good cause and prejudice, or that he is actually innocent.[9] However, procedural default is not jurisdictional, and the Court can consider procedurally barred arguments if the Government fails to press the default. *Trest v. Cain*, 118 S. Ct. 478, 480 (1997); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) ("[T]he Government's failure to raise the default may operate as a forfeiture of its right to defend on that ground[.]"). The United States did not raise procedural default in its brief. In the interests of justice, and because the Government does not argue for operation of the default, the Court, in its discretion, does not *sua sponte* raise default to dismiss Back's claims and instead addresses the merits of the arguments. Indeed, the Court, in this scenario, treats the United States's failure to raise the argument as forfeiture of it. *Elzy*, 205 F.3d at 886.

---

[8]      "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Id.* Cause sufficient to excuse default ordinarily consists of "some objective factor external to the defense" that prevented Defendant from raising the issue on direct appeal, "not . . . whether counsel erred[.]" *Murray v. Carrier*, 106 S. Ct. 2639, 2645 (1986). The procedural default doctrine only bars "claims that could have been raised on direct appeal, but were not[.]" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

[9] The matters Back here raises were plainly not "outside the record below" and "inappropriate for direct appeal." DE #337-1, at 6. To the contrary, they were central issues in the trial record, but Back did not raise them on appeal.

On the merits, the full case history is essential to understanding Back's argument:

The Court initially appointed Back CJA counsel. DE #2 (IA Minute Entry); *see also* DE #3 (Financial Affidavit). The next day, Hon. Stephen W. Owens and Hon. W. Kent Varney entered appearances as retained counsel. DE #4. The Court terminated CJA counsel's representation. DE #8 (Order). Within a month, Mr. Owens moved to withdraw, citing Back's "refus[al]" to pay, DE #15 (Motion), and the Court ultimately denied the motion. DE #26 (Minute Entry Order). The day after that denial, counsel again moved to withdraw, citing Back's inability to pay. DE #28 (Motion). The Court held a hearing and denied the renewed motion "based upon the status of the case at this time." DE #30 (Minute Entry Order); *see also* DE #330 (Tr. of motion hearing on 4/23/12). Owens & Varney remained as counsel for Back.

Back ultimately went to trial, and the jury found him guilty on all counts. Following trial, Back appeared before Judge Thapar on June 5, 2013, for sentencing.[10] At that time, Back professed that he had not previously had sufficient time to review the presentence investigation report, and Judge Thapar accordingly continued the sentencing. DE ##333 (Stat. Conf. Tr.); 239 (Minute Entry). The parties reappeared on September 4, 2013. Back expressed some discontent with PIR content and a disagreement with his attorneys over whether a particular witness testified at trial. Back eventually asked the Court: "If you can hear me, I want to know, can I fire this man, fire my attorney and his assistant?" DE #334 (Tr.), at 7-8. Judge Thapar responded: "You retained them, you hired them, so you can fire them. I can't stand in the way of that." *Id.* at 8. Back said, "Okay. They're fired. They represent me no longer." *Id.* Back initially agreed to continue

---

[10] Curiously (and seemingly erroneously), the minute entry from the June 5, 2013, proceeding described Owens and Varney as appointed counsel. DE #239 (Minute Entry Order).

to sentencing *pro se* that day—"I'll represent myself[,]" *id.* at 12; "If I can represent myself, I'll represent myself. [Judge Thapar:] Okay. But do you want an attorney next to you as a sounding board? [Back:] No." *Id.* at 14. Judge Thapar properly proceeded to engage in a *Faretta* colloquy with Back concerning whether to proceed *pro se*. *Id.* at 16-21. Back ultimately, based on his exchange with the Court, changed his mind: "Well, maybe appoint me an attorney." *Id.* at 21. The Clerk drew counsel in open court, and Judge Thapar, accordingly, continued sentencing to a later date. DE ##244 (Minute Entry Order); 246 (Minute Entry Order).

Judge Thapar expressly appointed Hon. David Hoskins to represent Back under the CJA, but he also required Back to supply a new financial affidavit. *See* DE #334, at 22 ("I'm going to have you fill out a voucher today."), 27 ("I'm going to appoint David Hoskins to represent you at the sentencing hearing."). After the hearing, Judge Thapar reflected his intent, which was to appoint Hoskins if Back in fact qualified. DE #246 (Order). Particularly, following this hearing, Judge Thapar wrote: "The defendant next expressed his desire to represent himself at his sentencing hearing and fired his counsel. He rejected the Court's offer of advisory counsel. The Court led the defendant through a colloquy to ensure that he fully understood the implications of proceeding without counsel. The defendant changed his mind and requested that the Court appoint him counsel, citing his indigence. He agreed to fill out the voucher required for representation under the Criminal Justice Act." *Id.* at 2. Judge Thapar referred the matter to Judge Atkins to determine "whether the defendant qualifies for appointed counsel under the Criminal Justice Act[.]" *Id.* If Back qualified, the District Court appointed Mr. Hoskins. *Id.* If Back did not qualify, the District Court established a binary choice: Back must

13

either retain "counsel before his sentencing hearing or elect to represent himself." *Id.* Judge Thapar ended the minute entry order with a warning about the unlikeliness of another sentencing continuance. *Id.* at 3. He stated, "The defendant is entitled to counsel—either appointed or retained." *Id.* The District Court reiterated the binary choice: "If he does not qualify for appointed counsel, he must retain counsel if he would like counsel to assist him." *Id.*[11]

Per the referral, Judge Atkins addressed CJA qualification and determined that Back had "sufficient assets to hire an attorney." DE #331 (Tr.), at 4. Judge Atkins expressly found that Back did not qualify for appointed counsel. *Id.* The Court stated: "But from looking at your financial affidavit, it appears that you have sufficient assets to retain an attorney for the sentencing proceeding for the remainder of this case. So I find that you do not qualify. So you – you have a choice to make, and that's whether you wish to retain an attorney or – or go on your own." *Id.* at 4-5 (paragraph breaks omitted); *see also* DE ##243 (9/5/13 Financial Affidavit); 248 (Minute Entry Order); 249 (Minute Entry Order). Judge Atkins advised that sentencing "will go forward as previously set, whether or not [Back] retains counsel or represents himself, pro se." DE #248. The Court repeated the dual alternatives presented to Back. DE #249, at 2.

Judge Atkins held a second status conference pre-sentencing. DE #332 (Tr.). The Court directed the Clerk to give Back a list of CJA panel attorneys, with telephone numbers, to facilitate contact for potential retention. Judge Atkins reaffirmed the prior finding that Back did not qualify for appointed counsel. Ultimately, the following exchange occurred: "'But now you have a – you have a choice, and if you wish to go on your own on November 5th, you can do that if you like.' DEFENDANT BACK: 'Well, I

---

[11] The docket does not show service of this Order directly to Back.

guess sir, I don't want to obligate myself to pay somebody something that I can't pay, and I cannot pay. So I'll just go ahead and represent my own, and ever what will be, will be.'" *Id.* at 11. Judge Atkins memorialized these events in minute entries. *See* DE ##251, 252. Judge Atkins wrote: "The defendant advised the Court that he would represent himself at sentencing." DE #251. The Court also noted: "[Back] also indicated that *while he would like to proceed with an attorney*, he cannot afford to pay for representation and he has not had any way of contacting other attorneys while incarcerated at the Pike County Jail." DE #252, at 1 (emphasis added). Back ultimately proceeded to sentencing *pro se*. DE #278 (Sentencing Tr.). He allocuted. *Id.* at 11-17. The Court, without further comment on counsel status, sentenced him. DE ##253 (Minute Entry Order); 254 (Judgment); 259 (Amended Judgment).

Post-sentencing, Back quickly moved for appointed counsel for his appeal. DE #258 (Motion). The District Court denied the motion. DE #261 (Order). Specifically, Judge Thapar found: "Based on his most recent financial affidavit, R. 243, Back has sufficient financial resources and income to enable him to obtain qualified counsel." DE #261 (internal quotation marks removed). The Court continued: "Back's affidavit also vastly understates his income and assets. . . . [H]e still has thirteen tracts of real property, among other valuable assets." *Id.* The Court noted his total net worth of $316,904.09 and total monthly income of $5,465. *Id.* at 1-2. The Court concluded: "Back had well qualified counsel and fired him. He chose not to hire new counsel even though he had adequate resources. These resources are more than adequate to provide qualified counsel for his appeal." *Id.* at 2. This finding is not part of or at issue in Back's motion.

15

Judge Atkins's qualification decision is also not one Back here challenges. There are, though, some curiosities in the determination. First, the Court (Judge Ingram, at Back's initial appearance) had already found that Back did qualify. DE #2 (Minute Entry Order). Second, when discussing the Back-Owens financial relationship earlier in the case, Judge Atkins had expressed doubt about Back's financial eligibility for appointed counsel but had stated his intent to hold an evidentiary hearing if the Court had to make a finding on qualification. DE #330, at 6-7 ("[W]ithout more, I can't find that he qualifies. . . . I think we probably would have to have a hearing and take some evidence regarding the status of his remaining assets."). Later, at the critical September 2013 hearing, Judge Atkins simply made his decision based on the new affidavit. DE #331, at 3-5 ("I've looked at your financial affidavit, Mr. Back, and considering that you only have that one appearance in this case, taking your financial affidavit for all the statements that it makes, I believe that you have sufficient assets to hire an attorney."; "But from looking at your financial affidavit, it appears that you have sufficient assets to retain an attorney for the sentencing proceeding for the remainder of this case."). That affidavit, however, was incomplete and actually included no values for Back's properties, reflecting Back's lengthy detention, alleged interim transfers, and claimed lack of detailed information. DE #243 (*e.g.*, listing as value of "Property – contested amounts in presentence report – said has given property away": "?"). Nonetheless, Judge Atkins pinned his finding solely on the affidavit. DE #331, at 3-5; *see also* DE #332, at 9 ("Well, what makes the Court thinks [sic] that I can afford a lawyer? It was the last affidavit that you filed[.]").

The Court also notes that Judge Atkins did not take account of the preliminary forfeiture order entered by Judge Thapar after trial. That order, though not final until

judgment, formalized the jury's forfeiture finding and opened the way for substitute asset seizure and forfeiture up to the $500,000 figure.[12] *See* DE #237. Any defendant seeking appointed counsel has the burden of proving economic need. *See, e.g.*, *United States v. Konrad*, 730 F.3d 343, 346-47 (3d Cir. 2013); *United States v. Fincher*, 538 F.3d 868, 876 (8th Cir. 2008); *United States v. Parker*, 439 F.3d 81, 93, 93 n.12, & 96 (2d Cir. 2006). Judge Atkins assessed the record, clearly viewed as important the limited remaining step in the case (the post-objection period sentencing hearing), and found Back ineligible for appointed counsel. Back does not criticize Judge Atkins's analysis or the manner in which he made the decision.[13] As such, and despite these misgivings, the Court assesses the *pro se* issues accepting the key foundational fact that Back could have afforded to retain his own lawyer and did not qualify for appointment of counsel under the Criminal Justice Act.

Back's situation is curious. He retained counsel throughout the case, at least since the initial appearance. He then fired them at (a hearing that was scheduled as) sentencing. He initially stated that he would proceed *pro se*, but after Judge Thapar warned him of the possible consequences, he decided that he would rather have an attorney. After further proceedings, the Court determined that Back did not qualify for appointed

---

[12] Though outside the scope of this motion, Judge Thapar also denied appointed counsel post-judgment based on Judge Atkins's finding and the PIR. DE #261 (Order). He did not reference the financial changes signified in the judgment, including a $20,000 fine and the final forfeiture of $500,000. Back went through the appellate process *pro se*.

[13] The PIR, though not referenced by Judge Atkins, did validate his analysis, reporting a net worth of over $316,000 and net cash flow of $3300+/mo. DE # 281. Back, represented during the pre-sentencing phase, made no objection to the financial findings in the PIR. There certainly was information suggesting Back had or would have trouble retaining a lawyer. Owens had tried to get out of the case for non-payment. After Judge Atkins's qualification ruling, Back negotiated with Hoskins but determined he could not afford a $10,000 quoted fee. DE #332, at 4-5 ("He asked me $10,000, and which I don't have $10,000."). Back persistently denied he could afford a lawyer. *See, e.g.*, *id.* at 11 ("I cannot pay.").

17

counsel. The Court provided Back with a list of attorneys to contact about possible retention for the limited purpose of sentencing. Back, ultimately, did not retain a lawyer. He made the following statement: "Well, I guess sir, I don't want to obligate myself to pay somebody something that I can't pay, and I cannot pay. So I'll just go ahead and represent my own, and ever what will be, will be." Judge Atkins noted, however, that Back "would like to proceed with an attorney[.]" DE #252, at 1. Thus, the non-indigent Back did not retain counsel, and the Court found him financially ineligible for appointed counsel. However, post-colloquy with Judge Thapar, Back maintained a desire for a lawyer. The record is not completely consistent on that point, though—for instance, Back raised no issue with proceeding *pro se* at the ultimate sentencing. He affirmatively engaged in the sentencing process, allocuted, and did not (at the final sentencing hearing) object to or raise any issue with his *pro se* status.

The Sixth Amendment protects the right of an accused in a criminal prosecution "to have the Assistance of Counsel for his defence." Because this right is "basic to our adversary system of criminal justice, [it is] part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States." *Faretta v. California*, 95 S. Ct. 2525, 2532 (1975).[14] "The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages

---

[14] The right to counsel likewise is functionally part of the Fifth Amendment's guarantee of due process. "[C]ases [construing the Fourteenth Amendment] are also authoritative when adjudicating a Fifth Amendment claim against the federal government." *Borkins v. U.S. Postal Serv. Employees*, 97 F. App'x 32, 34 n.2 (6th Cir. 2004); *see also United States v. Stewart*, 306 F.3d 295, 308 n.2 (6th Cir. 2002) (noting that the Due Process Clauses of the Fifth and Fourteenth Amendments are "analogous"); *Med. Mut. v. deSoto*, 245 F.3d 561, 575 (6th Cir. 2001) (Gilman, J., concurring) ("[T]he language and policies behind the Due Process Clause of the Fourteenth Amendment are essentially the same as those behind the Due Process Clause of the Fifth Amendment[.]"). The Court resolves Back's separate Sixth Amendment and due process claims together; they, in essence, raise the same issue, and a unified standard functionally governs.

of the criminal process." *Iowa v. Tovar*, 124 S. Ct. 1379, 1383 (2004). Sentencing is a critical stage of the criminal process to which the right to counsel attaches. *Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008). "A defendant's right to counsel extends to sentencing." *United States v. Green*, 388 F.3d 918, 921 (6th Cir. 2004).

Most cases discuss the various nuances of the Sixth Amendment right in the context of *indigent* defendants. Back, however, was not indigent, per Judge Atkins's finding at the time. The Sixth Amendment's right to counsel clearly persists even if the defendant is non-indigent. *Daniels v. Lafler*, 501 F.3d 735, 738 (6th Cir. 2007) ("The [Sixth Amendment's] adequate-representation right applies to all defendants[.]");[15] U.S. Const. amend. VI ("[I]n *all* criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." (emphasis added)). The Court perceives Back to raise two independent questions: (1) Did the Court violate his rights when it permitted him to fire retained counsel? and (2) Did the Court violate his rights when it declined to appoint new counsel in the particular circumstances? The Court answers both in the negative.

Back, within limits, had the right to fire counsel that he retained. *Cottenham v. Jamrog*, 248 F. App'x 625, 635-36 (6th Cir. 2007) ("[A]n unwanted counsel represents the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." (internal quotation

---

[15] *Daniels*, and certain other cases that this Recommendation cites, were § 2254 cases. Their analyses also apply to a § 2255 theory. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other."). Both statutes exist, in large part, to vindicate constitutional principles.

marks omitted)); *United States v. Brown*, 785 F.3d 1337, 1344 (9th Cir. 2015) ("[T]he Sixth Amendment right to counsel of choice means that a defendant has a right to fire his retained lawyer for any reason or for no reason." (internal alterations, quotation marks, and emphasis removed)). "This right to select counsel of one's choice is the root meaning of the constitutional guarantee found in the Sixth Amendment. . . . While the right to counsel of one's choice is not absolute, in general, a defendant who can afford to hire counsel may have the counsel of his choice unless a contrary result is compelled by purposes inherent in the fair, efficient and orderly administration of justice." *Id.* at 1343-44 (internal quotation marks, citations, and alterations removed). The Sixth Circuit has stated: "[T]he important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court[.]" *Green*, 388 F.3d at 921. "[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel is the functional equivalent of a valid waiver of counsel." *Id.* (internal quotation marks and alteration omitted).

The *Brown* court continued:

> [T]his case implicates not only the constitutional right to discharge retained counsel but also the statutory right to appointment of counsel in his stead. When a court denies a motion to substitute appointed for retained counsel, as the district court did in this case, it is really deciding two issues. The first, whether the defendant may *discharge* the attorney whom he retained, implicates the Sixth Amendment right to counsel of choice, as discussed above. But the court ruling on such a motion is, at the same time, also considering a request for *appointment* of counsel. And, while a criminal defendant's right to appointed counsel of course does have a constitutional aspect, in federal court the question whether counsel should be appointed is governed, first and foremost, by the CJA, 18 U.S.C. § 3006A. Of course, as a practical matter the two issues—discharge of retained counsel and appointment of CJA counsel—are intertwined, and the decisions as to them will ordinarily be considered and announced

together. However, the sequence and manner in which the two issues are addressed may not leave the defendant without any counsel at all, absent a voluntary, knowing, and intelligent decision to proceed *pro se*. The difficult issue, in an intertwined case of this nature, occurs with respect to the first issue, the constitutional issue, whether the defendant may discharge retained counsel. If the answer is yes, the CJA provides that counsel shall be appointed for the indigent defendant unless he wishes to assert his *Faretta* rights.

*Id.* at 1344-45 (citations omitted); *see also United States v. Diaz-Rodriguez*, 745 F.3d 586, 591 n.7 (1st Cir. 2014) (noting other factors, such as that fired counsel would still have to move to withdraw under the Local Rule and that the decision to fire counsel "affects the interests of the government in preparing for trial and the court in the administration of justice"); *Johnson v. Dickinson*, No. 2:10-CV-1251-JKS, 2012 WL 468377, at *5 (E.D. Cal. Feb. 13, 2012) (describing "the limitations on a defendant's right to hire or fire retained counsel").[16]

"[W]here a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately

---

[16]     "Once a district court allows *a financially qualified defendant* to exercise his right to fire his retained lawyer, § 3006A(b) requires, absent a voluntary, knowing, and intelligent decision to proceed *pro se*, that the court appoint a new attorney in his place." *Brown*, 785 F.3d at 1346 (emphasis added). Of course, the Criminal Justice Act applies only to defendants financially eligible for appointed counsel. *See* 18 U.S.C. § 3006A(a)(1) ("Representation shall be provided for any financially eligible person . . ."). "While a defendant has a constitutional right to counsel, . . . he does not have a right to court-appointed counsel *at state expense* unless he cannot afford to pay an attorney himself." *Pruitt v. Hartley*, No. 07-CV-1480-WYD, 2008 WL 4371925, at *4 (D. Colo. Sept. 22, 2008) (emphasis added).

There may be certain situations under Rule 44, if a non-indigent defendant is "unable to retain substitute counsel[,]" for reasons other than financial, that a court may still have a duty to appoint counsel. *See United States v. Rivera-Corona*, 618 F.3d 976, 982 n.5 (9th Cir. 2010); *see also* Fed. R. Crim. P. 44(a) ("A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right."); *United States v. VeVea*, 446 F. App'x 63, 65 (9th Cir. 2011).

retained." *Benitez*, 521 F.3d at 634. "This is not to say, of course, that the district court would have been required to permit [Defendant] to substitute counsel or to delay the sentencing hearing. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S. Ct. 2557, 2565-66, 165 L.Ed.2d 409 (2006) (concluding that the defendant's Sixth Amendment right to counsel of his choosing was violated, but acknowledging that that right is not absolute and recognizing that courts have 'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar')." *Benitez*, 521 F.3d at 635. The inquiry centers on the right to change the status of representation, which can implicate contrary public interest and case administration values.

Judge Thapar allowed Back to fire his retained counsel essentially as a matter of course. DE #334, at 8 ("You retained them, you hired them, so you can fire them. I can't stand in the way of that."). The record shows that Back and his lawyers had a dispute over whether a particular witness had or had not testified at trial. Back (who ultimately was proven right about the witness roster) viscerally viewed the lawyers' insistence as disloyal and dishonest to him. *See* DE #334, at 3 ("I think he's lying, just to put it frank."); *id.* at 8 (criticizing, "He agreed along with it[.]"). Per *Benitez*, the District Court perhaps should have made a more searching inquiry of Back "as to the source and nature of [his] dissatisfaction" with his retained counsel. 521 F.3d at 634. However, any failure to make a *Benitez*-compliant inquiry is, on this record, harmless because the Court permitted Back to fire counsel—*i.e.*, it granted his request—and it correspondingly granted a sentencing continuance.[17] Per cases like *Cottenham*, *Brown*, and *Green*, the

---

[17] The Sixth Amendment "demands that a non-indigent defendant be given a fair opportunity to secure counsel of his own choosing." *Pipkin v. Warden*, No. 3:09-1803-TLW-JRM, 2010 WL 1727889, at *5 (D.S.C. Mar. 2, 2010). Back retained counsel of

District Court clearly did not violate Back's rights by *granting* the oral motion to permit him to fire his retained counsel and correspondingly continuing sentencing. Indeed, as the cases express, and per the Sixth Amendment values, the greater risk would have been to force Back to keep counsel that he no longer wanted. *See, e.g.*, *Gonzalez-Lopez*, 126 S. Ct. at 2561 (referencing "the right of a defendant who does not require appointed counsel to choose who will represent him"); *Cottenham*, 248 F. App'x at 635-36; *United States v. Ammons*, 419 F. App'x 550, 551-52 (6th Cir. 2011); *Benitez*, 521 F.3d at 634; *United States v. Mack*, 258 F.3d 548, 555-56 (6th Cir. 2001); *United States v. Johnson*, 333 F.2d 1004, 1005 (6th Cir. 1964). *Benitez* protects the right to counsel as expressed in the right to substitute or change lawyers. Often, a change request surfaces at a time that will imperil the schedule, cause delay, or disrupt the orderly conclusion of proceedings. It is there that *Benitez* requires a searching inquiry before a court determines not to allow a counsel or representation status change. That is not the case here, where Judge Thapar let Back do just what he desired—fire his lawyers and, with a fair period to resolve representation, conclude the sentencing. There is no *Benitez* violation warranting relief.

The question then becomes whether Back waived the right to counsel and whether the Court violated Back's rights by failing to appoint new counsel. Waiver may occur either explicitly (through words) or impliedly (through actions). In general, "[w]aiver of the right to counsel . . . must be a knowing, intelligent act done with sufficient awareness of the relevant circumstances." *Tovar*, 124 S. Ct. at 1383 (internal quotation marks and alteration removed). "A person accused of crime, however, may choose to forgo representation. While the Constitution does not force a lawyer upon a defendant, . . . it

_____

choice throughout the case, and, post-firing, he certainly had such an opportunity—indeed an over 2-month continuance.

23

does require that any waiver of the right to counsel be knowing, voluntary, and intelligent[.]" *Id.* at 1387 (internal quotation marks and citation removed). Waiver is intelligent "when the defendant knows what he is doing and his choice is made with eyes open." *Id.* (internal quotation marks removed). There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* "As to waiver of trial counsel, . . . before a defendant may be allowed to proceed pro se, he must be warned specifically of the hazards ahead." *Id.* A judge must "rigorously" convey the pitfalls of proceeding without counsel. *Id.* at 1388 (alteration removed).[18]

"On direct appeal, the Government bears the burden of proving a defendant has waived his right to counsel knowingly and voluntarily. . . . But when a defendant seeks . . . the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of [c]ounsel[.]" *Jones v. Walker*, 540 F.3d 1277, 1292 (11th Cir. 2008)

---

[18] The Sixth Amendment "mandates that counsel be provided for a defendant who cannot afford to retain private representation in any case in which he will be incarcerated if convicted." *United States v. Thompson*, 191 F. App'x 185, 189 (4th Cir. 2006). "Although courts must protect a defendant's right to counsel, . . . courts must also take care not to force counsel upon a defendant because the Sixth Amendment also gives a defendant the right to represent himself[.]" *Id.* at 189-90. "The right to counsel and the right to self-representation are mutually exclusive, and therefore the assertion of one constitutes a de facto waiver of the other." *Id.* at 190 (internal quotation marks removed). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . In deciding whether the defendant's waiver of counsel was sufficient, we examine the entire record." *Id.* (internal quotation marks removed) (concluding, "[u]nder the unique circumstances of this case," and examining "the entire record[,]" that defendant "knowingly, intelligently, and voluntarily waived his right to counsel").

(internal citations and quotation marks omitted). "A writ of habeas corpus may be issued only if the petitioner convinces the court by a preponderance of evidence that he did not validly waive his right to counsel." *Id.* "Consequently, it is [Petitioner] who bears the burden of proving his waiver was unknowingly made. To meet his burden, [Petitioner] was required to point to evidence in the record from which a trier of fact could reasonably conclude [Petitioner] did not understand the dangers of self-representation at the time he waived his right to counsel." *Id.* (paragraph break removed). The Sixth Circuit agrees: "a defendant has the burden of proof in a habeas proceeding to establish that he did not competently and intelligently waive his constitutional right to the assistance of counsel." *Beatty v. Caruso*, 64 F. App'x 945, 950 (6th Cir. 2003).

Considering the totality of the circumstances, the Court finds that the non-indigent Back, through his failure to retain an attorney, impliedly waived the right to counsel under the applicable cases. The following considerations are instructive:

Back retained at sentencing, after termination of the lawyers, a Sixth Amendment right to counsel absent knowing, voluntary, and intelligent waiver. *Green*, 388 F.3d at 921. The process began correctly: Judge Thapar engaged in a colloquy with Back concerning the many dangers of proceeding to sentencing without counsel. At the end of this colloquy, Back invoked his right to counsel: "Well, maybe appoint me an attorney." Judge Thapar acknowledged this: "The defendant changed his mind and requested that the Court appoint him counsel, citing his indigence."

The District Court referred the matter to Judge Atkins to determine Back's CJA qualification. Judge Atkins held two hearings pending final sentencing. Judge Atkins found that Back did not financially qualify for appointed counsel but did not take Back

through the colloquy again. On October 7, 2013, Back obviously maintained the posture that he would like counsel. He stated two problems with retaining counsel: (1) "I can't afford an attorney" and (2) "I didn't have no way of contacting no attorney." DE #332, at 3. Back explicitly said, "I would like to have an attorney." *Id.* He lamented previously cashing in an insurance policy, which was "basically the only money that I had." *Id.* at 5. The Court, by Judge Atkins, reiterated that it found that Back did not financially qualify for appointment. *Id.* After more discussions, Back finally said: "Well, I guess, sir, I don't want to obligate myself to pay somebody something that I can't pay, and I cannot pay. So I'll just go ahead and represent my own, and ever what will be, will be." *Id.* at 11.

This statement—"I'll just go ahead and represent my own, and ever what will be, will be"—perhaps alone is not a valid express waiver of the right to counsel. It is not a knowing, voluntary, and intelligent relinquishment of that right. Given the ongoing claim of indigency, it is much more like mere acquiescence to the reality he faced—where the Court told him he must either retain a lawyer or proceed *pro se*. *Cf. United States v. Utrera*, 259 F. App'x 724, 727-28 (6th Cir. 2008) (finding valid waiver when Utrera responded, "Myself. I will represent myself" and collecting cases); *United States v. Holland*, 522 F. App'x 265, 272 (6th Cir. 2013) (referencing the "affirmative disavowal required for waiver"); *Beatty*, 64 F. App'x at 950 (stating waiver must be "voluntary" and must "constitute a knowing and intelligent relinquishment or abandonment of a known right"). Back's statement expresses resignation to the fact that "ever what will be, will be" when he reiterated financial inability to retain counsel but the Court found he was able. Mere minutes before this statement, Back maintained his posture, consistent since his colloquy with Judge Thapar, that he "would like to have an attorney." The Court did

26

not again take Back through a waiver process, and it never found that Back knowingly, voluntarily, and intelligently waived the right to counsel. *See United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004) ("After the questioning, the district court should make an express finding on the record that the accused has knowingly and voluntarily waived his right to counsel.").[19] This record contains no waiver finding. It is worth remembering that "courts indulge every reasonable presumption against waiver of fundamental constitutional rights" and "do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 58 S. Ct. 1019, 1023 (1938) (internal quotation marks removed); *see also James v. Brigano*, 470 F.3d 636, 643-44 (6th Cir. 2006) (affirming grant of habeas relief because, *inter alia*, "at no time did the . . . trial court judge ensure that James's waiver of appointed counsel was knowing and voluntary" and "at no time did the state trial judge make an explicit finding that James's waiver was knowing and intelligent").

However, the Sixth Circuit recognizes an implied-waiver-through-failure-to-retain theory. *United States v. Pittman*, 816 F.3d 419, 425-27 (6th Cir. 2016); *King v. Bobby*, 433 F.3d 483, 493 (6th Cir. 2006). "If a person is offered a choice," the Sixth Circuit explained, between an appointed lawyer (for which Back did not qualify here), retaining

---

[19]     Notably, in an unpublished decision, the Sixth Circuit wrote: "The elaborate waiver procedure outlined in [*United States v.*] *McDowell*[, 814 F.2d 245 (6th Cir. 1987),] does not apply to waiver of counsel during sentencing. The dangers of self-representation at trial are simply not present at sentencing." *United States v. Napier*, 884 F.2d 581, 1989 WL 100865, at *5 (6th Cir. 1989) (table). The Court of Appeals has recognized that subsequent cases have "weaken[ed]" the force of this statement. *United States v. Evans*, 559 F. App'x 475, 480 n.2 (6th Cir. 2014); *see also United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007) ("Thus, we may safely say that a criminal defendant in federal court has a right to represent himself or herself at sentencing.").

Of course, a court's failure to "use the exact model inquiry set forth in the *Bench Book*" is not reversible error. *United States v. Coles*, 695 F.3d 559, 563 (6th Cir. 2012). "Substantial compliance with this series of questions is sufficient." *United States v. Ross*, 703 F.3d 856, 867 (6th Cir. 2012).

counsel, and self-representation, "and says 'no'" to the other available options, "he's chosen the third[.]" *Pittman*, 816 F.3d at 426 (quoting and citing *United States v. Oreye*, 263 F.3d 669, 670-71 (7th Cir. 2001)). *Pittman* is not the first time the Sixth Circuit has favorably cited *Oreye*—a case that strongly endorses the implied-waiver-through-failure-to-retain theory. *See King*, 433 F.3d at 492. *King* itself compares helpfully to Back's situation: "[B]y rejecting all of his options except self-representation, King necessarily chose self-representation. The court instructed him that his only choices were to have [lawyer] Mgbaraho continue to represent him, hire another attorney to represent him, or represent himself. Having rejected Mgbaraho and not hiring another attorney, King chose to represent himself." *Id.* That is what happened here: after Back fired his counsel, the Court made its financial finding and informed Back that his lone options were to "hire another attorney to represent him, or represent himself." When Back did not hire another attorney (after being given substantial time and resources (the Court even provided Back a list of lawyers and contact information to aid retention) to do so), Back "chose to represent himself."

*Oreye*, which the Sixth Circuit has twice treated with favor, is instructive. "Oreye never said he wanted to proceed pro se, but a defendant can waive his right to counsel through conduct as well as words." 263 F.3d at 670. The Seventh Circuit explained: "Oreye was told that if he dismissed Shanin and didn't find a substitute at his own expense, he would have to proceed pro se. . . . If you're given several options, and turn down all but one, you've selected the one you didn't turn down. Granted, some cases from other circuits require evidence of misconduct to establish waiver by conduct. . . . But, with all due respect, we think these cases are wrong." *Id.* (citations omitted). The

28

Sixth Circuit, through its treatment of the issue in *Pittman* and *King*, and through its

reliance on *Oreye* and the Seventh Circuit's analysis, trends away from the "circuits [that]

require evidence of misconduct to establish waiver by conduct."[20] Instead, when Back

was "able to afford counsel yet, despite numerous continuances, neglected to do so," the

"district court properly treated [Back]'s failure to retain counsel as the waiver of the right

to counsel of his choice." *United States v. Thibodeaux*, 758 F.2d 199, 201 (7th Cir. 1985)

(*per curiam*) ("The right to counsel as well as the right to counsel of one's choice may be

waived if one able to afford counsel does not retain an attorney within a reasonable

period of time.").

The *Pittman* / *King* / *Oreye* theory and analysis apply to Back. After Back fired

his retained counsel,[21] the Court gave him a thrice-reiterated choice: if he did not qualify

_____

[20] Many other Circuits have similar implied-waiver-through-failure-to-retain lines of cases. *See, e.g.*, *United States v. Mitchell*, 777 F.2d 248, 258 (5th Cir. 1985); *United States v. Terry*, 449 F.2d 727, 728 (5th Cir. 1971) ("It is undisputed that Terry was given a reasonable time to secure counsel of his personal choice. . . . It is equally clear that he was financially able to retain counsel. In these circumstances, his failure to retain counsel was properly treated by the court as a waiver of his right to counsel."); *United States v. Rodriguez Vallejo*, 496 F.2d 960, 964-65 (1st Cir. 1974) ("The right to have counsel at all—as well as the right to counsel of one's choice—may be waived if one able to afford counsel does not retain him within a reasonable time."); *United States v. Barcelon*, 833 F.2d 894, 899 n.6 (10th Cir. 1987); *Hanson v. Passer*, 13 F.3d 275, 280 (8th Cir. 1994) (The Sixth Amendment guarantee of counsel "attaches regardless of financial capability. This is not to say that a defendant who is financially capable of retaining counsel on his own is entitled to court-appointed counsel when he refuses to hire an attorney."); *see also United States v. Bauer*, 956 F.2d 693, 695 (7th Cir. 1992) ("If the magistrate judge and district judge were right in concluding that Bauer indeed could pay, then the stubborn refusal to do so was waiver by conduct."); *see generally* Sarah Gerwig-Moore, *Gideon's Vuvuzela: Reconciling the Sixth Amendment's Promise with the Doctrines of Forfeiture and Implicit Waiver of Counsel*, 81 Miss. L.J. 439 (2012). As an example of a Circuit that requires some form of misconduct to imply waiver (or, in a debate over terminology, forfeiture), *see United States v. Goldberg*, 67 F.3d 1092, 1100-02 (3d Cir. 1995); *United States v. Leggett*, 162 F.3d 237, 249-50 (3d Cir. 1998) ("To forfeit the right to legal representation, a defendant must engage in 'extremely serious misconduct.'").

[21] The District Court's *Faretta* colloquy was substantially complete. Regardless, when a defendant waives the right to counsel through actions, as here, "the Constitution does not

for appointed counsel (the Court later determined he did not), he must either retain different counsel or proceed *pro se*. By failing to retain counsel, Back chose self-representation. When a defendant is offered choices in this context and rejects all but one, he chooses the one he did not reject. The Sixth Circuit has endorsed this right to counsel waiver theory as valid.

As a general matter, at least, *Pittman* left no room for doubt: a district court may permissibly make the "stakes . . . clear" and give a defendant a choice between maintaining current counsel (whom Back here fired), hiring a new attorney, or representing himself. 816 F.3d at 425. "When he continue[s] to express dissatisfaction with his lawyers and decline[s] to hire someone new, the district court reasonably [can] conclude[] that only the third option remained: proceeding pro se." *Id.* at 425-26. As *Pittman* stated, and as applicable here, "That is this case." *Id.* at 426; *see also Thibodeaux*, 758 F.2d at 201 (in a parallel factual scenario, where the defendant was able to afford counsel but refused to do so after multiple continuances, upholding the district court's treatment of the refusal to retain as waiver).

This record is not perfect. For example, the Court in the prior proceedings never made a waiver finding, and the Court questions, to some degree, the underlying

---

require a court to engage in an extended discussion about the repercussion of the waiver." *Pittman*, 816 F.3d at 426 (quoting *United States v. Ross*, 703 F.3d 856, 868 (6th Cir. 2012)). "[W]aiver by conduct requires no more than the minimum *Faretta* warnings." *King*, 433 F.3d at 493. The Sixth Circuit "ha[s] declined to exercise [its] supervisory powers to instruct district court judges how to proceed when a defendant has, by his conduct, waived his right to counsel. In those cases, [the Court of Appeals] generally leave[s] it to district court judges within the bounds of reason to determine how best to deal with the defendant." *Pittman*, 816 F.3d at 427 (internal citations, quotation marks, and alteration omitted). Here, as in *Pittman*, the District Court gave Back "plenty of information about the risks of self-representation." *Id.*; DE #334, at 15-22. In fact, the colloquy was good enough to convince Back that he should have a lawyer. The trouble for Back, as the Court has laid out, is that he did not qualify for appointed counsel, and he then refused to retain new counsel.

qualification analysis and result. The Court would have also preferred a greater focus and a clear finding on Back's competency to represent himself. *See Indiana v. Edwards*, 128 S. Ct. 2379 (2008) (holding that a state may conclude that a defendant is competent to stand trial but not competent to represent himself). [The Court notes, though, that it perceives no basis for a competency hearing. *See also* part III.C.]

Further, *Pittman* and *King* are not *exact* factual parallels to Back's situation. Both cases were nuanced and involved some level of contumacious conduct by the defendant. Pittman, for instance, was on his fourth attorney and doggedly refused to get along with his counsel. 816 F.3d at 425-26. The Sixth Circuit clearly and consistently holds that contumacious or case-delaying behavior by defendants can amount to waiver of the right to counsel through actions. *See, e.g.*, *Green*, 388 F.3d at 921 ("a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a valid waiver of counsel"); *Ross*, 703 F.3d at 868 (emphasizing the importance of a defendant's "desire to delay the inevitable," "attempt[s] to manipulate the system," and "dilatory conduct").[22] King "was attempting to manipulate the system by first refusing to retain an attorney, then by refusing to work with his attorney." 433 F.3d at 493. Further, King, in fact, ultimately "signed a written waiver" of the right to counsel. *Id.* at 488.

Here, on the other hand, Back had not cycled through attorneys and did not make persistent, unreasonable demands for dismissal of counsel. Rather, he fired the only

---

[22] *See also, e.g.*, *Swiger v. Brown*, 86 F. App'x 877, 882 (6th Cir. 2004) (upholding denial of habeas relief on a Sixth Amendment claim because, on "this unusual record," the trial court was justified in not permitting a defendant "to stop the criminal justice process in its tracks by rejecting appointed counsel and refusing self-representation"); *Sullivan v. Pitcher*, 82 F. App'x 162, 164 n.1, 165 (6th Cir. 2003) (*per curiam*) (affirming denial of habeas relief on a Sixth Amendment claim and finding "waiver through conduct" where the court had appointed six attorneys for defendant).

31

attorneys he had retained throughout the case and simply requested appointment for the final sentencing hearing. There is utterly no credible suggestion that Back was attempting to manipulate the system, disrupt the administration of justice, act obstructively, or unreasonably delay the proceedings. *See, e.g.*, DE #334, at 11 (Judge Thapar: "You see, he's not trying to delay the sentencing."); DE #333, at 6 (declining to "make a finding that he's gaming the system" because "there's no indication . . . that anyone would choose to continue to do time in a state facility with the opportunity to get sentenced today and go to a federal facility"). The Court does note, though, that due to Back's actions, sentencing had to be rescheduled twice (on June 5 and again on September 4) and that Back's stubborn posture as to counsel directly ignored or contradicted Judge Atkins's prior financial determination. Ultimately, because of Back's actions, five months of delay elapsed between the date of the originally scheduled sentencing and the final sentencing. In the end, application of these cases to Back perhaps stretches their import (*i.e.*, precedent does not absolutely dictate the result here), but the Court is convinced that the Sixth Circuit would treat Back's situation similarly to Pittman's and King's.

In sum, the Sixth Circuit has not directly answered the implied waiver question that Back presents: Absent some form of contumacious defendant conduct, does a defendant the Court determines to be non-indigent waive the right to counsel by refusing to retain counsel? The Sixth Circuit consistently implies waiver of the right to counsel through intractable behavior, persistent and unreasonable dissatisfaction or inability to work with attorneys, enduring uncooperativeness or intransigence, or consistent patterns of engaging in case delaying behavior. However, *Pittman*'s and *King*'s strong treatment

of the general issue in favor of the implied-waiver-through-failure-to-retain theory convinces the Court that the Sixth Circuit would find waiver in this scenario— *i.e.*, a situation without contumacious defendant conduct, but where Back stubbornly refused to retain counsel despite the Court's ultimatum either to retain or go *pro se*. The Court reiterated this choice multiple times, *see, e.g.*, DE ##246, 249, 252, 331, 332, and Back never retained replacement counsel. Accordingly, the Court recommends finding no Sixth Amendment or due process violation. After the Court gave him the two-option-choice, Back, under the cases, validly, if impliedly, waived the right to counsel through his failure to retain. "[B]y rejecting all of his options except self-representation, [Back] necessarily chose self-representation." *King*, 433 F.3d at 492.

C.    *Due Process / IAC re: Competence (Argument 3)*

Third, Back says: "Petitioner's rights to due process and effective assistance of counsel were violated when both the Court and his lawyer failed to investigate and/or evaluate Petitioner's legal competence." DE ##337, at 7; 337-1, at 49-58. The United States responded, DE #344, at 6-9, and Back replied. DE #345, at 5-6.[23]

Due process protections regulate the prosecution of a defendant not competent to stand trial. *See Medina v. California*, 112 S. Ct. 2572, 2574 (1992). To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *See Dusky v. United States*, 80 S. Ct. 788, 789 (1960) (*per curiam*); *see also* 18 U.S.C. § 4241(a) (phrasing test as whether

---

[23] As with argument 2, Back likely procedurally defaulted the due process challenge here. The United States raised default as to this issue. DE #344, at 8-9. Nevertheless, the Court will evaluate the argument on the general competency topic as essentially tacked onto the underlying IAC claim.

defendant is "unable to understand the nature and consequences of the proceedings him or to assist properly in his defense"). "The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006). The test is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id.* Simple doubt is insufficient; the evidence must raise a "bona fide doubt" as to Defendant's competence. *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004).

"If before or during trial sufficient doubt arises about a defendant's competence . . . the trial court should order a competency hearing." *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011) (internal quotation marks removed). "There are, of course, no fixed or immutable signs of incompetence, the standard is a high one, and the relevant factors— evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence—are difficult to evaluate. . . . When virtually everything is potentially relevant and nothing is dispositive, reasonable minds occasionally may come to different conclusions about whether to hold a competency hearing." *Id.* (internal quotation marks and citation removed). District Courts in the Sixth Circuit have applied these principles to deny habeas motions alleging failure to conduct competency evaluations. *E.g.*, *Ciavone v. Mackie*, No. 11-14641, 2014 WL 354515, at *9-*10 (E.D. Mich. Jan. 31, 2014); *Sutton v. Rapelje*, No. 2:09-CV-10616, 2012 WL 642559, at *4-*5 (E.D. Mich. Feb. 28, 2012).

As in *Cowans*, a reasonable decision, considering all the facts, not to order a competency hearing "at most is what happened here." 639 F.3d at 247. Fatal to his motion, Back presents no proof of his then-incompetence. The Court has reviewed every transcript and the entire case file. As the record plainly shows, no counsel or the Court ever felt the need to raise competence as an issue. Back did not raise it himself. He appears to have adequately defended himself in the proceedings, even for a time *pro se*. As Back suggests, the record possibly reflects some general confusion or lack of familiarity with the proceedings by Defendant, but such confusion is not uncommon for a non-lawyer. Regardless, possible general confusion is not the standard for incompetence. Confusion is not irrationality. Indeed, Judge Thapar characterized Back as "clearly a very articulate and intelligent person," and the Court had "no doubt that he understands what's going on." DE #284 (Final PTC Tr.), at 10. Back's former attorneys characterized Back's competence, under oath:

> Counsel for Mr. Back spent numerous hours with Mr. Back. . . . Mr. Back watched [certain discovery] videos several times and read the witness statements and was able to detail facts which assisted in the cross examination of witnesses. Mr. Back at all times appeared to understand the nature of the proceedings and never was his competency questioned.
>
> Mr. Back could recall facts and details concerning witness statements and evidence with precision. Mr. Back always appeared to be clean, well groomed and assisted with his defense. Mr. Back's memory and cognitive ability were never questioned nor did he present any behavior that would suggest his competency was in question. Mr. Back knew at all times the roles of the judge, prosecutor, and defense counsel. Mr. Back could recall all the government witnesses and provided useful impeachment information about said witnesses.

DE #344-1 (Owens and Varney Affidavit). Thus, his attorneys swore that they perceived no contemporaneous basis for a competency inquiry.

The Court has reviewed every page of the transcripts with care. It is obvious that Back had an ability to consult with his lawyers with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him.[24] At least, Back has not proven that, at the time, he did not. He offers no medical evidence—or evidence of any type—in support of this claim in the habeas motion. The Court perceives no basis from the record for sufficient or bona fide doubt about Back's competence. The Court views Back as reacting rationally over the course of the proceedings and not making illogical arguments or exhibiting questionable behavior. Counsel was not ineffective in not perceiving justification for a competency inquiry here. *Cowans*, 639 F.3d at 247-48 (finding no IAC when the parties' and the court's decision not to order a competency evaluation was "a reasonable determination in view of the universe of relevant circumstances" and "a reasonable determination on this record").[25]

### D.     IAC re: Suppression (Argument 4)

Finally, Back generally challenges counsel's effectiveness regarding the warrant authorizing a search of the applicable Salyersville National Bank safety deposit box. DE ##337, at 8; 337-1, at 59-62. The United States responded, DE #344, at 9, and Back replied. DE #345, at 6-7. Back generally argues that counsel was ineffective for failing to

---

[24] In his brief, Back examines many of his post-trial, pre-sentencing comments. DE #337-1, at 51-58. The Court does not interpret any of the comments as necessitating competency analysis—and, importantly, Judge Thapar, Judge Atkins, and any then-counsel perceived no need to initiate such analysis at the time. Back cannot succeed on an IAC claim based on a failure to perform a competency evaluation without presenting evidence to support his assertion that the failure deprived him of due process under the standard. Back rationally reacted to the Court's questions, admitted, logically, when he did not understand something, and acted reasonably in all case proceedings.

[25] The Court likewise rejects Back's adjoined freestanding due process claim. Regardless of any procedural default (which the United States raised as to this issue, DE #344, at 8-9), Back has not presented substantial evidence that he was, at any point, incompetent. Accordingly, there was no due process violation by a failure to evaluate competency. *Filiaggi*, 445 F.3d at 858.

argue that law enforcement searched the box prior to warrant issuance or failing to reopen the issue following Officer Dalrymple's trial testimony.

Generally, when challenging a suppression issue on habeas review, Petitioner must show that "(1) a suppression motion would have been meritorious, (2) [his] counsel's failure to file one was objectively unreasonable (the 'performance' prong), and (3) but for [his] counsel's deficient performance in that regard, [he] would not have pleaded guilty [or, here, the result of the proceeding would have been different] (the 'prejudice' prong)." *United States v. Ratliff*, 719 F.3d 422, 423 (5th Cir. 2013). "Though free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray*, 721 F.3d at 762. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 106 S. Ct. 2574, 2583 (1986).

This search was the subject of a pretrial motion to suppress. DE #108 (Motion to Suppress). In recommending denial, Judge Atkins stated, "The undersigned issued the warrant to search the safety deposit box on March 2, 2012, and Agent Dalrymple executed it that afternoon." DE #114 (Report & Rec.), at 3. Judge Thapar adopted the recommendation as unopposed. DE #144 (Order); *see also* DE #344-1 (Owens and

Varney Affidavit), at 2-3. The Sixth Circuit "affirm[ed] the district court's denial of Back's pretrial motion to suppress evidence." DE #303, at 2.

The record clearly shows safety deposit box search only following warrant issuance. Judge Atkins issued the warrant on March 2, 2012, at 10:45 a.m. DEA TFO Richard Dalrymple declared under penalty of perjury that he executed the warrant on March 2, 2012, at 1:00 p.m.[26] Dalrymple's testimonial comment about execution the "following day," that is the day following the search of Back's residence (*i.e.*, March 1), *see* DE #276, at 20,[27] may simply be misremembrance, an informal estimation made in the give-and-take of trial testimony, or mistake, but the record inarguably shows that Judge Atkins issued the search warrant and authorized the search before Officer Dalrymple searched the box.[28] Back offers nothing, other than these seemingly erroneous sequencing statements referencing "the following day" or "the next day," to overcome the sworn statement on the warrant return.

Thus, because counsel did challenge the search pretrial, because there is no basis for Back's further challenge, and because there would have been no basis for counsel to reopen the issue at trial (given Judge Atkins's prior comments ("The undersigned issued the warrant to search the safety deposit box on March 2, 2012, and Agent Dalrymple executed it that afternoon.") and the plain warrant return), counsel was not ineffective for

---

[26] The Court files the warrant return in the case record contemporaneously with this Recommendation.

[27] Back also attaches a single, isolated page from what appears to be the Government's appeal brief stating that the safety deposit box search happened "[t]he next day" after February 29, 2012. DE #337-2. This likewise simply appears, considering the full record, to be innocent error.

[28] As to Back's timing concerns, the Court simply notes that warrants may be transmitted electronically, allowing essentially instantaneous transmission from Pikeville (issuance site) to Salyersville (search location). Even without electronic transmission, two hours and fifteen minutes is sufficient time to physically take the warrant from Pikeville to Salyersville.

raising a meritless argument.[29] *Mapes*, 171 F.3d at 427 ("Counsel could not be unconstitutionally ineffective for failing to raise these meritless arguments."); *Ray*, 721 F.3d at 763 ("Because Ray has not demonstrated that his Fourth Amendment claim has merit, his underlying ineffective assistance of counsel claim fails.").[30]

### E.    Evidentiary Hearing

Neither Back nor the United States requests an evidentiary hearing. Nevertheless, the Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Back's claims do not warrant a hearing; the § 2255 motion filings and record of the case show, for the reasons stated above, that all claims fail. There are no contested factual issues that, in the context of these claims, justify a hearing. The record, which needs no further development, fully delineates the merits of each claim.

---

[29] Back also generally requests return of the seized $15,000.00. A motion for return of seized property has particular contours and standards, *see, e.g.*, Fed. R. Crim. P. 41(g), which Back did not reference or attempt to satisfy. *See also, e.g.*, DE #278, at 24-27 (discussing standard). That topic is not properly before the Court. Further, the United States previously described the funds as administratively forfeited. *See* DE #278, at 25. The Court notes Back's ongoing civil litigation concerning the matter. *See generally* case no. 7:16-CV-72-ART-EBA.

[30] The context is somewhat awkward here because property return seems to be Back's motion target. Back never asserts that suppression of the $15,000 would change the outcome of his trial, which is also fatal to his IAC claim via operation of the *Strickland* prejudice requirement.

IV.     **CERTIFICATE OF APPEALABILITY**

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Back has not made a "substantial showing" as to the claimed denial of rights in issues 1, 3, and 4; those *Strickland* and other claims conclusively fail. Reasonable jurists would not find the Court's determination on the merits debatable. However, Back has made, for the reasons discussed in more detail above, a substantial showing as to issue 2. Reasonable jurists could find the Court's assessment of the merits of issue 2 debatable or wrong. The absence of an express waiver analysis and finding, and / or the application of *Pittman* and *King* to the circumstances of this case, could produce different conclusions among reasonable jurists. Accordingly, the Court recommends that the District Court

40

grant a Certificate of Appealability as to issue 2 and deny a Certificate of Appealability as to issues 1, 3, and 4.

## V.        RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #337), **GRANT** a Certificate of Appealability as to issue 2, and **DENY** a Certificate of Appealability on issues 1, 3, and 4.

*   *   *   *   *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 26th day of May, 2016.



Signed By:

*Robert E. Wier*

United States Magistrate Judge